IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 24, 2014

**STATE OF TENNESSEE v. JENNIFER LEIGH SALYERS**

**Appeal from the Criminal Court for Sullivan County**
**No. S59089        R. Jerry Beck, Judge**

_____

**No. E2013-02332-CCA-R3-CD - Filed June 25, 2014**

_____

The Defendant, Jennifer Leigh Salyers, pled guilty to two counts of reckless aggravated assault. The trial court denied the Defendant's application for judicial diversion and sentenced her to serve sixty days in jail, followed by two years of supervised probation. The Defendant asserts that the trial court erred when it denied her application for judicial diversion and a sentence of full probation. After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J. and D. KELLY THOMAS, JR., J., joined.

Andrew J. Gibbons, Blountville, Tennessee (on appeal) and Frank L. Slaughter, Jr., Bristol, Tennessee (at hearing) for the appellant, Jennifer Leigh Salyers.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry Staubus, District Attorney General; and Julie Canter, Assistant District Attorney General for the appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

This case arises from burn marks found on the two-year-old victim at the time of a custody exchange between the victim's parents. A Sullivan County grand jury indicted the Defendant, the victim's mother, for aggravated child abuse and aggravated child

endangerment. On May 13, 2013, the Defendant entered an *Alford* plea[1] of guilty to two counts of the reduced charge of reckless aggravated assault. At this hearing, the State offered the following recitation of the facts in support of the trial court's acceptance of the guilty plea:

> [A] referral was made in regards to a minor child, A.S., in regards to burn marks on his right inner thigh and right forearm on June 29th, 2010. The child had gone to visit his mother on Friday morning, June 25th, and was supposed to stay until Sunday, June 27th.
>
> According to the child's father, Brad Salyers, his mother, Judy Salyers, took the child to the Defendant's, who's the mother, Jennifer Salyers' residence. When she went back on Sunday to pick up the child, the grandmother stated that the Defendant and the victim were not at the residence, and she didn't know where they were.
>
> She stated that she notified her son of the developments, and ended up having a deputy with the Sullivan County Sheriff's Department go to the residence to obtain his son pursuant to the custody order, and this occurred on Tuesday June 29th, 2010.
>
> When Brad Salyers arrived, the Defendant pointed out cigarette burns over the victim's body to the sheriff's deputy. Brad Salyers picked up the victim and immediately took him to Johnson Memorial Hospital in Abingdon, Virginia.
>
> Once at the hospital, the victim was seen by Dr. McBride, who dated the burn on his leg and arm as being approximately two to three days old, which mean[t] that the burns would have occurred on Saturday or Sunday during the time that the child victim was in the custody of his mother, the Defendant, Jennifer Salyers. Dr. McBride was also able to diagnose the burns as being intentional due to the locations, and as if the child had been seared by perhaps hot glass or metal.

---

[1] See *North Carolina v. Alford*, 400 U.S. 25 (1970), in which the United States Supreme Court discussed the right of an accused to plead guilty in his best interest while maintaining his or her actual innocence.

Finding a factual basis for the guilty plea, the trial court accepted the Defendant's *Alford* plea of guilty to two counts of reckless aggravated assault. The trial court did not enter a sentence at that time because the Defendant was seeking judicial diversion. The parties agreed that, if the Defendant was denied judicial diversion, she would be sentenced to concurrent two-year sentences for her convictions, with the trial court to determine the manner of service.

At the sentencing hearing, the trial court admitted into evidence the presentence report and victim impact statement. The victim impact statement, written on behalf of the victim by his father on August 1, 2013, stated:

> This crime has affected me, [the victim], and my entire family. [The victim] has extreme difficulty feeling safe in any circumstance. He often wakes up in the middle of the night terrified of a multitude of things. [The victim] has intense feelings of anxiety that I feel have resulted from what happened to him on that day.
>
> [The victim] received 3 long lasting scars on his arm and leg. I feel he has mental scars that may take years to erase.

The victim impact statement also addressed a subsequent event when the Defendant violated court supervision orders.

> On August 10th, 2013 I found [the victim] with [the Defendant] at Walmart. (Exit 7) [The Defendant]'s visitation is supposed to be supervised by [the victim's] grandmother ([the Defendant]'s mom). I called the police who filed a report and let [the victim] go home with me.
>
> This is the first time [the Defendant] has been caught but [the victim] tells me this is a common occurance [sic].
>
> He has told me he woke up in the middle of the night alone with [the Defendant's boyfriend] and that he was scared to death.
>
> Numerous occasions he has told me he has slept at [the Defendant]'s friend[']s house without Nana.

The trial court also entered into evidence a January 16, 2012, doctor's report from a physical examination of the victim which stated:

> Skin of the right arm and right leg is completely clear except for a crisscross

scar o[n] [the victim's] right lower medial thigh which was the exit site of his Broviac catheter [from an unrelated procedure].

The trial court reviewed the Defendant's prior arrest history which included: failure to obey a traffic light, driving while license suspended, improper registration of license plates, uninspected vehicle, stalking, safety belt violation, no operator's license, failure to display license plates, reckless driving amended to speeding, possession of a radar detector, and defective equipment. About the arrest record, the trial court stated, "Individually those aren't very strong, but she's had a bunch of them. I think it has some weight. Very little weight, but some weight."

The trial court noted the Defendant's academic history, which included college attendance and the Defendant's "sporadic" employment history. The Defendant admitted in her presentence investigation interview to opiate addiction for which she was seeking treatment. The Defendant first entered treatment for this addiction in 2005 and successfully completed the program in January 2008. After a relapse, she sought treatment in March 2008. As of September 2012, she was receiving treatment at Recovery Associates in Bristol, Tennessee. She was prescribed suboxone to address the side effects of withdrawal from opiates, and she hoped to no longer be taking Suboxone by the end of 2013. The trial court noted that the victim's seeking treatment weighed in her favor but expressed concern regarding her long-term problem with opiates.

The Defendant stipulated that she had incurred a contempt of court conviction after violating a juvenile court order requiring supervision of her visitation with the victim. The State offered certified documents of the juvenile court's contempt finding of August 10, 2013.

Joann Kennedy, the Defendant's mother, testified on the Defendant's behalf. Ms. Kennedy stated that the Defendant had lived with her for the past three years and that the juvenile court had ordered her to supervise the Defendant's visits with the victim since 2011. She denied seeing any scars on the victim's body other than the surgical scars he received from unrelated treatment for birth defects. Ms. Kennedy described the victim's parents' divorce as "very bitter." About the Defendant's violation of the supervision order, Ms. Kennedy explained that she had asked the Defendant to go to the store to buy nausea medicine and Gatorade. She recalled that "[the victim] threw a fit to go with [the Defendant]," so she allowed the Defendant to take the victim unsupervised because she "saw no harm in it." Ms. Kennedy agreed that she was to monitor the Defendant's visits with the victim. Ms. Kennedy testified that the Defendant's "main priority" is to complete her education and teach elementary school.

-4-

After considering the facts of the case and "negative and positive factors," the trial court found that the contempt of court conviction for disobeying the visitation order was "great enough" to deny judicial diversion.

The trial court then considered the Defendant's request for an alternative sentence. The trial court considered the circumstances related to the offense, the injury to a young child, and the Defendant's subsequent refusal to comply with supervision orders, and denied the request to impose a sentence involving full probation. The trial court ordered the Defendant to serve sixty days in the Sullivan County jail followed by two years of supervised probation. It is from these judgments that the Defendant now appeals.

## II. Analysis

The Defendant argues on appeal that the trial court erred when it failed to consider the relevant factors for decisions involving the grant of judicial diversion. She also asserts that the trial court failed to "give due weight and proper consideration to the sentencing principles." The State responds that the trial court did not abuse its discretion when it denied the Defendant judicial diversion or when it ordered a sentence of split confinement. Accordingly, the State asks this Court to affirm the trial court's sentence.

## A. Judicial Diversion

The Defendant contends that the trial court erred by not considering the relevant factors for the decision. She maintains that had the trial court conducted a proper review of her request for judicial diversion, her request would have been granted. The State responds that the record contains substantial evidence to support the trial court's denial of judicial diversion. We agree with the State.

When a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty. T.C.A. § 40-35-313(a)(1)(A) (2010). The statute states that a trial court may grant judicial diversion in appropriate cases. *Id.* Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon. *Id.* To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(i) As used in this subsection (a), "qualified defendant" means a defendant who
>
> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;

(b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and

(c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i). Eligibility does not automatically entitle the defendant to judicial diversion. *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). *Id.*

Once a defendant is deemed eligible for judicial diversion, the trial court must consider several factors when deciding whether to grant judicial diversion. Due to the similarities between pre-trial diversion, which is administered by the district attorney general, and judicial diversion, courts draw heavily from pre-trial diversion law and examine the same factors:

> [A court] should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997).

When the trial court considers the common law factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," then this court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *State v. Kiara Tashawn King*, --- S.W.3d ---, No. M2012-00236-SC-R11-CD, 2014 WL 1622210, at *9 (Tenn. Apr. 23, 2014). Our Supreme Court has stated:

> Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the Parker and Electroplating factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id*. Failure to consider the common law factors results in loss of the presumption of reasonableness, and this Court is required to conduct a *de novo* review or remand to the trial court for reconsideration. *Id*.

The record in this case demonstrates that the trial court considered the factors and identified the specific factors applicable to this case. The trial court considered the Defendant's criminal and academic history, her behavior since the arrest, which included a violation of a custody order involving the victim, her drug use and treatment, her unwillingness to comply with a court order, and her employment history. The trial court then stated that, in considering all the factors, it believed the Defendant's subsequent violation of the custody order involving the victim outweighed the factors favoring the grant of judicial diversion.

Our review of the record reveals that there is substantial evidence to support the trial court's decision. The Defendant had numerous arrests, was in treatment for an ongoing addiction to prescription medication, and had a "sporadic" work history. After an arrest for burn marks found on the minor victim while in the Defendant's custody, the Defendant violated a juvenile court's order that her visitation with the victim be supervised. Based upon this evidence, we can not conclude that the trial court abused its discretion in denying the Defendant judicial diversion. The Defendant is not entitled to relief.

### B. Alternative Sentence

The Defendant asserts that the trial court abused its discretion when it ordered the Defendant to serve sixty days in confinement before serving a two-year supervised probation sentence. The State responds that the trial court acted within its discretion in denying the Defendant a sentence of full probation. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" 380 S.W.3d 682, 708 (2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v.*

*Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise,* 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). We are also to recognize that the defendant bears the burden of demonstrating that the sentence is improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2012); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2012).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A.§ 40-35-102(6) (emphasis added).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

At the sentencing hearing, the trial court sentenced the Defendant, as a Range I, standard offender, to concurrent two-year sentences for each of her convictions for reckless aggravated assault, a Class D felony.

In this case, the trial court properly considered the relevant sentencing factors. The trial court concluded that the Defendant did not have a long history of criminal conduct or that less restrictive measures than confinement had frequently or recently been applied. The trial court found that the Defendant failed to abide by a juvenile court order, filed after the Defendant's arrest for her role in the victim's injuries. The order required that the Defendant's visits with the victim be supervised, and the Defendant violated this order by taking the victim to a store unaccompanied. The trial court found that the Defendant needed to appreciate the importance of following court orders when it denied her request for alternative sentence.

In sentencing matters we are to afford the trial court a presumption of reasonableness. In so doing, we can not conclude in this case that the trial court's

logic and reasoning were improper when viewed in light of the factual circumstances. The trial court considered the pertinent facts of this case and appropriate sentencing principles in ordering confinement. As such, its denial of alternative sentencing is presumptively correct. *See* T.C.A. § 40-35-401(d). The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court properly denied judicial diversion and properly sentenced the Defendant. As such, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE